Dear Honorable Patricia C. Jessamy
You have asked for our opinion about the extent to which the Child Support Enforcement Administration ("CSEA") of the Department of Human Resources ("DHR") is required to provide support staff for the Collateral Nonsupport Unit of the Office of the State's Attorney for Baltimore City ("SAO"). In particular, you ask whether CSEA has budgetary responsibility for support staff assigned to the Collateral Nonsupport Unit.
For the reasons given below, we conclude that 1992 legislation enacted by the General Assembly contemplated that CSEA would furnish support staff for those SAO attorneys who provide legal representation in child support matters in Baltimore City. The number and duties of such employees should be determined by agreement between the SAO and CSEA.
 I Background
A. Child Support Enforcement Generally
In order to qualify for a significant federal subsidy of the operational costs of child support enforcement programs, a state must have a plan for child support enforcement in all of its jurisdictions. That plan must provide for a single state-level organization to administer the programs, but also may allow for cooperative arrangements with local courts and law enforcement officials. The local agencies may receive a portion of the federal subsidy. CSEA has been designated as the State-level agency to coordinate child support enforcement in Maryland. See generally 75 Opinions of the Attorney General 81 (1990) (detailing history of statutes).
State law provides for legal representation of CSEA by a State's Attorney under certain circumstances. If a State's Attorney decides to undertake that responsibility, the State's Attorney is to enter into an annual written agreement with the Secretary of Human Resources and the relevant county. FL § 10-115(g)(1). The agreement is to "establish reasonable administrative and fiscal requirements for: (i) providing and continuing representation; and (ii) reimbursement." FL § 10-115(g)(2). These agreements are known as "cooperative reimbursement agreements" or "CRAs".
B. Child Support Enforcement in Baltimore City
1. Consolidation
In Baltimore City, the SAO Collateral Nonsupport Unit provides legal representation for the Baltimore City Office of Child Support Enforcement ("BCOCSE"), a division of CSEA responsible for child support enforcement services in the City. Prior to the early 1990s, the non-attorney staff members assigned to child support matters in the Collateral Nonsupport Unit were employees of the SAO. In 1992, the Legislature consolidated staff of three agencies devoted to child support matters in Baltimore City by transferring to CSEA certain employees of the SAO and circuit court clerk's office who dealt with child support enforcement. Chapter 169, Laws of Maryland 1992. That law provided that "all the functions, powers, duties, and employees" of the Domestic Relations Division of the Office of the Clerk of the Circuit Court for Baltimore City and, "[e]xcept for the Assistant State's Attorneys, all employees of the Collateral Nonsupport Unit of the [SAO]" were transferred to CSEA. Id. §§ 2-3. According to the fiscal note for the bill, the transfer involved six employees from the Collateral Nonsupport Unit of the SAO and 18 employees in the clerk's office. Fiscal Note to House Bill 612 (1992). The six employees transferred from the SAO consisted of five clerical employees and an investigator. The transfers from the SAO were to be accomplished in accordance with a provision of the State personnel law for transfers of employees into the State merit system. Chapter 169, § 3(2). The law made further provisions for the transfer of pension contributions and payments due on termination. Id., § 3(3)-(4).
2. Privatization
Several years later, the State "privatized" child support enforcement in Baltimore City, but the SAO continued to provide legal representation. In particular, in 1995, the General Assembly established a pilot program under which a private entity undertook child support enforcement in Baltimore City and Queen Anne's County. Chapter 491, § 3, Laws of Maryland 1995, codified at FL § 10-119.1.[1] As part of the pilot program, State employees involved in child support enforcement in Baltimore City were transferred to a private vendor. However, this Office advised that support staff assigned to assist the SAO remained employees of CSEA under an exception in the bill for legal representation. See FL § 10-119.1(c)(6); Memorandum of Catherine M. Shultz, Principal Counsel, to Lois Y. Whitaker (July 31, 1995).
3. Agreements Between CSEA and SAO
In the years since consolidation and privatization, the SAO has continued to provide legal representation for BCOCSE, and CSEA has furnished support staff for the SAO attorneys. Each year the SAO and CSEA have entered into a Cooperative Reimbursement Agreement ("CRA"), under which the SAO agrees to undertake legal representation for child support services and CSEA agrees to reimburse of 66% of the SAO's costs by passing through funds available under federal law. See, e.g., Cooperative Reimbursement Agreement, Terms and Conditions (May 2003).
CSEA and the SAO have also, from time to time, entered into separate agreements that, among other things, set forth the duties of the support staff provided by CSEA, and procedures for the hiring, evaluation, reclassification, and discipline of those employees. See, e.g., Memorandum of Agreement (November 1, 1996). In large measure, those agreements appear to be an effort to establish protocols for the supervision of employees in the State personnel system by attorneys who are not part of that system. Those agreements acknowledge that the SAO provides legal representation and that CSEA provides "clerical, investigative, and customer services support" for the SAO attorneys. Id.
You indicate that CSEA recently sought to make substantial changes to the arrangement it has with the SAO concerning support staff. For example, a dispute has arisen about the extent to which CSEA is obligated to fill vacant support staff positions.[2]
 II Analysis
Your inquiry concerns both the status of employees who assist attorneys in the SAO's Collateral Nonsupport Unit and the nature of CSEA's obligation to provide administrative support.
A. Status of Transferred Employees
The status of the support staff is determined by Chapter 169, the 1992 legislation that transferred those positions to CSEA. "Where the statutory language is plain and free from ambiguity, and expresses a definite and simple meaning, courts do not normally look beyond the words of the statute itself to determine legislative intent." Western Correctional Institution v. Geiger, 371 Md. 125, 141, 807 A.2d 32, 42
(2002) quoting Degren v. State, 352 Md. 400, 417, 722 A.2d 887, 895
(1999). Nonetheless, the context in which a statute appears and its legislative history are helpful in confirming the meaning.371 Md. at 142.
The 1992 legislation that consolidated the support enforcement agencies in Baltimore City provided for the transfer to CSEA of "all the functions, powers, duties, and employees" of the Domestic Relations Division of the Clerk's Office. Chapter 169, § 2. It essentially moved employees and their duties from one State-funded agency to another.
That legislation also provided for the transfer to CSEA of "all employees," except for the Assistant State's Attorneys, in the Collateral Nonsupport Unit. This had the effect of moving those employees from a City-funded agency to a State-funded agency without changing their duties — i.e., providing clerical and investigative assistance to the attorneys in the SAO Collateral Nonsupport Unit. In contrast to § 2 which transferred "functions, powers, duties, and employees" from the Clerk's Office, § 3 referred only to the transfer of employees. The difference is significant in that, while the transferred positions became part of CSEA, they would continue to provide necessary support for a function performed by the SAO attorneys.
The legislative file indicates that Chapter 169 formalized a consolidation that had already been informally effected a year earlier and was designed to improve the efficiency and accountability of child support collections.[3] See Floor Report of House Committee on Appropriations concerning House Bill 612 (1992); DHR Position Statement concerning House Bill 612 (1992); Letter of Stuart O. Simms, State's Attorney, to Honorable Charles J. Ryan, Chairman of House Appropriations Committee concerning HB 612 (February 24, 1992). The fiscal note for the bill concluded that there would be no effect on State expenditures, as the State had already been paying the expenses associated with the transfers. Fiscal Note to House Bill 612 (1992).
The Executive Director of CSEA at the time informed the Legislature that CSEA "has direct authority over the consolidated agency." DHR Position Statement, supra. While the transferred employees would retain certain seniority rights and the option to remain in the Baltimore City retirement system, it was clear that they would become State employees within DHR. See Letter of Elizabeth Bobo, Deputy Secretary of DHR, to Honorable Thomas P. O'Reilly, Chair of Senate Finance Committee concerning House Bill 612 (April 2, 1992) (outlining employment rights of transferred employees under bill and State law).
The State's Attorney at the time noted that the bill would transfer support staff only and would not affect any attorney staff. Simms letter, supra.
The legislative history thus demonstrates a universal understanding that the SAO support staff would be transferred to the State personnel system subject to the budgetary and administrative control of CSEA, but would still provide administrative support to SAO attorneys.
B. Obligation of CSEA to Provide Administrative Support
Implicit in Chapter 169 was an understanding that CSEA would provide administrative support for the SAO Collateral Nonsupport Unit. Surely the Legislature did not intend that the transfer of clerical personnel from the SAO to CSEA in 1992 would result in the elimination of administrative support for the attorneys providing legal representation for child support enforcement in Baltimore City. Nor did it attempt to dictate in precise terms what that support should be.
While CSEA is obligated to provide administrative support for the SAO, we do not believe that the Legislature intended that support staff of the SAO Collateral Nonsupport Unit would be frozen, in terms of the number of employees and their duties, for the indefinite future. Office automation may increase productivity of staff, with the result that fewer employees may accomplish the same tasks. The expectation that the consolidation of the clerical staffs of the three agencies in the early 1990s would result in greater efficiency suggests that the General Assembly anticipated that the consolidated agency would ultimately be able to process the same amount of work with fewer employees. On the other hand, an upswing in the volume of cases over time or the imposition of additional reporting requirements may increase the staffing requirements. Finally, resource and budget constraints may require an agency to revisit its priorities; in a fiscal crisis, it may be impossible for an agency to have the ideal number of personnel to fully carry out all of its duties.
We understand that CSEA and the SAO now disagree about the administrative support that should be provided to SAO attorneys to carry out their child support enforcement responsibilities. It is not unusual, particularly in times of fiscal stress, for conflicts to arise between an agency with operational responsibilities and another government unit responsible for funding or supporting those activities. Several prior opinions of this Office have discussed the responsibility of a county to provide financial and administrative support for constitutional State entities such as a State's Attorney's Office, a circuit court clerk's office, or a sheriff's office. Those opinions acknowledged that, while a county could apply budgetary and fiscal constraints to the latter agencies, it could not do so in a way that would compromise their essential functions. See 80 Opinions of the Attorney General 295 (1995) (county must provide sufficient funding to allow State's Attorney to exercise prosecutorial discretion over significant offenses); 74 Opinions of the Attorney General 263 (1989) (State's Attorney subject to county's budget and fiscal policies, but those policies may not prevent State's Attorney from carrying out official duties); 73 Opinions of the Attorney General 92 (1988) (circuit court subject to county budget and fiscal policies, but those policies may not "deprive the court of adequate and suitable facilities, equipment or personnel reasonably necessary" to carry out its functions); 60 Opinions of the Attorney General 647, 656-57 (1975) (county obligated to provide sheriff, within reasonable limits, with necessary funds to discharge constitutional and statutory obligations). We think there is a similar principle implicit in Chapter 169 and FL § 10-115.
Unlike the situations presented in those opinions, the SAO is not required to provide legal representation for child support services. Rather, the statute provides that the State's Attorney "may make a written agreement" with DHR to provide such representation. FL § 10-115(c), (g) (emphasis added).[4] If a State's Attorney elects to enter into such an agreement, the statute specifies that the agreement "shall establish reasonable administrative and fiscal requirements for: (i) providing and continuing representation; and (ii) reimbursement." FL § 10-115(g)(2). In our view, the SAO could condition its willingness to continue providing legal representation on receiving reasonable administrative support.
The merits of a particular allocation of support staff — and specification of the duties of that staff — cannot be resolved in a legal opinion. BCOCSE, and ultimately CSEA, have responsibility for child support services in Baltimore City. The SAO provides legal representation to assist that effort. Ultimately, CSEA must allocate its available resources to carry out those responsibilities.
We suggest that the two agencies employ the following framework for resolving their differences. The SAO's assessment of its needs for administrative support should ordinarily be accorded deference by CSEA. That assessment could be adjusted by reference to various benchmarks, such as the administrative support typical of other law offices that provide similar representation, specific changes in office automation or reporting responsibilities that affect the work of the unit, trends in the volume of cases, and the proportionate effect of agency-wide budget cuts, among other factors. If the SAO believes that the support services provided are insufficient, it may, of course, decline to enter into further agreements to provide legal representation.
In our view, the two agencies must "make honest attempts to resolve these differences through negotiation and compromise." 60 Opinions of the Attorney General at 657. Attorneys from this Office are prepared to use their best efforts to assist the SAO and CSEA reach an accommodation that supports the legislative objective that underlies the 1992 legislation — effective child support enforcement in Baltimore City.
 III Conclusion
In summary, it is our opinion that the 1992 consolidation law contemplated that CSEA would provide administrative support for those attorneys in the SAO Collateral Nonsupport Unit who provide legal representation in child support matters. The number and duties of the support staff should be determined by agreement between the SAO and CSEA.
 J. Joseph Curran, Jr. Attorney General
 Kathy F. Crosby Assistant Attorney General
 Robert N. McDonald Chief Counsel Opinions and Advice
[1] Unless the General Assembly takes further action, the privatization pilot program will end on September 30, 2009. Chapters 312 and 392, § 4, Laws of Maryland 2003.
[2] There apparently are also disagreements about the duties of an investigator assigned to the SAO and the adequacy of statistical documentation of SAO collection efforts.
[3] The legislation had been preceded by a 1990 memorandum of understanding ("MOU") signed by the Secretary of Human Resources, the Baltimore City State's Attorney, the Baltimore City Sheriff, the Clerk of the Circuit Court, and a representative of the circuit court judges. Memorandum of Understanding (October 19, 1990). The signatories of the MOU agreed to work toward the consolidation of child support services in a single entity under the aegis of CSEA. When legislation to formalize that consolidation initially failed in 1991, DHR and Baltimore City entered into second agreement under which the State would fund the salaries of an investigator and five clerical employees in the Collateral Nonsupport Unit of the SAO. Memorandum of Agreement (May 20, 1991).
[4] The bill that enacted FL § 10-115 was specifically amended to provide State's Attorneys with an annual option whether to provide legal representation. See Letter of Richard A. Batterton, Secretary of Human Resources, to Honorable Joseph E. Owens, Chairman, House Judiciary Committee concerning House Bill 1478 (March 16, 1976). *Page 123